May it please the Court, my name is Greg Wallace and I represent Gregory Smith in this Social Security Disability Appeal. Mr. Smith is an Iraqi war veteran. He served seven months there as an infantryman. He was involved in a Humvee accident while he was there. His Humvee was rammed from the back by a large truck. And unfortunately his wife also died while he was in Iraq. Now he is unable to work due to post-traumatic stress disorder, PTSD, major depression, and chronic back and knee pain. Now I want to focus this morning in the brief time we have here on Smith's mental impairments because that's where the greatest discrepancy exists between the ALJ's decision and the record evidence. The ALJ found that Smith's post-traumatic stress disorder, PTSD, and depression only limit him essentially to unskilled work. Now that stands in stark contrast to the opinion of Dr. Amason who is Smith's treating psychiatrist at the VA. Dr. Amason stated in May of 2008 that Smith was suffering from PTSD and major depressive disorder. In a letter to Smith's employer, he said that Smith had limitations in terms of memory and concentration, that he was having flashbacks from his PTSD, and that the meds that he was taking was causing him to be sedated. In fact, Smith testified at the time he was trying to drive some trucks and testified that he had to stop doing that because he was falling asleep. In March 2009, Dr. Amason stated that Smith was in compliance with his treatment but there had been no improvement, that he was still having the symptoms of PTSD. And then in October 2009, Dr. Amason issued a treating source statement which is at pages 524 or 525 of the transcript and is also reflected at pages 16 and 17 in our brief. In that treating source statement, Dr. Amason indicated that maintaining attention for a two-hour segment or completing a normal work day without interruptions from psychiatric symptoms, working at a persistent pace. He also said that Smith was seriously limited in a number of other work abilities and that he would likely miss at least three in 2008 with the claimed onset date of February 05. I'm not sure that this all started in 2008. That's when the appeal is from the denial from February 2005 on? Yes. Are you conceding that before the VA treatment in 08, the ALJ's decision was sound? There was VA treatment prior to that. In fact, in 2005... Just answer the question. I didn't mean to... No, it's a good question and while there might be some grounds for amending the onset date, there is VA treatment prior to 2008. Dr. Orndorff, for example, December 2005, in his report, there would be what I would refer you to. Now, the ALJ gave Dr. Amason's opinion only limited weight, which is, I think, a generous characterization at best. He listed several reasons why he... Counsel, wasn't there a lot of other medical evidence in the record that conflicted with Dr. Amason's or showed that the claimant was doing better than Dr. Amason stated? There was some medical evidence from the four doctors that the commissioner emphasizes in her brief, but that medical evidence, I don't think, rises to the substantial level, especially first given the evidence that does support Dr. Amason's opinion, which are the opinions of Dr. Orndorff in December of 2005, a VA psychiatrist. The opinion of Dr. Goad from Pulse Judgment Concentration. He was walking a time bomb. You have Smith's attendance at more than 90 sessions of a PSD support group over a three-year period from 2009 to 2011. And, of course, you have the VA disability, 100% disability rating. Now, the contrary evidence that I think you're referring to, first there was a report from Dr. Holcomb. He was a VA psychiatrist who examined Smith in April of 2008. He concluded that Smith was not suffering from PTSD. His opinion is contradicted by every other VA doctor who examined or treated Mr. Smith. Dr. Orndorff, Dr. Goad, Dr. Cowell, Dr. Amason, Dr. Hogan, who treated him, she treated Smith in 2011. His three-page- Is there a Dr. Jackson who, in 2009, saw him and there was at least one note where he said, no, I don't need to change my medications. I'm doing, you know, my medications are fine when the doctors had offered that. Isn't that correct? A simple reference to somebody doing fine on medications may be, as this court has recognized in at least two other cases, may be a reference that says to the effect, he's doing fine for someone who has severe PTSD. And so the fact that his medications were stable, Dr. Amason says that he's compliant with his medications, but he still was having PTSD symptoms. And that's what the evidence shows all the way through 2011. Now, the ALJ's decision was in August of 2010, so that 2011 evidence is beyond the relevant period here. But there's no indication that Smith was ever cured or that his symptoms of PTSD ever were so controlled that they disappeared. PTSD is not a listed impairment. Severe PTSD is not listed, is it? Not a listed impairment? Yeah. I mean, when you say, I mean, your argument is sort of, well, he had severe PTSD, so it doesn't matter that he's doing fine today. He's disabled. That suggests it must be a listed impairment. Well, my argument is not that he's doing fine. He does suffer from PTSD, which, as Dr. Amason said, affects his ability to concentrate, affects his ability to be around people. Is there any listing that dissects the various levels of PTSD? Not that I recall. I think it might be, it might fit into one of the affective disorder listings there, but there's no separate listing, if I recall, for PTSD. But Dr. Amason's opinion sets out a number of very real work-related limitations. Isn't it settled, though, that the ALJ is the one whose duty is to resolve the conflicts and the evidence? And if there's evidence to support the ALJ's determination, aren't we supposed to affirm that? Well, that, the question, yes, the question is, though, whether there's evidence to support the ALJ's decision. And in this case, what the ALJ and the commissioner relies on is a report by, a three-page report by a VA doctor who's contradicted by every other VA doctor who is, that's inconsistent. He concludes there's no PTSD, inconsistent with Smith attending 90 sessions over a three-year period of his PTSD support group. And the VA rejected that rating for PTSD. The ALJ and the commissioner today rely on the opinion of Dr. Spelman, another doctor who said he doesn't suffer from PTSD, one-time consultative examiner. And guess what? Dr. Spelman reached his opinion without reviewing any of Smith's VA records. How can that be a more complete and thorough evaluation than that of Smith's treating doctor, Dr. Amason? He made, he undertook no objective assessments, such as the Mississippi test for PTSD symptoms, which was administered by Dr. Ornduff in December of 2005, and he concluded that Smith suffers from severe PTSD. And again, Dr. Spelman's opinion is inconsistent with every other VA doctor except, every other treating doctor except Dr. Holcomb. These two opinions, Dr. Holcomb and Dr. Spelman, are outliers in that they conclude he has no PTSD at all. Even the ALJ disagreed with that. The government also relies on the opinion of Dr. Rankin, who is a state agency medical consultant who never examined Mr. Smith, but simply reviewed his records. Except, if you read Dr. Rankin's report, the only records that he reviewed were the records of Dr. Holcomb and Dr. Spelman, two doctors who concluded that Smith does not have PTSD, and he's simply an echo chamber for their opinions. And finally, there's Dr. Felkins, who is the non-examining psychiatrist who simply reviewed Smith's records, and we have detailed a number of discrepancies in our reply brief, factual discrepancies with the VA medical evidence that appear in her report. And so, yes, if there was substantial evidence, and if this was a matter of simply the ALJ examining two conflicting sets of doctor reports, both that are supported by the record, then the ALJ is entitled to resolve those conflicts. But that's not what we have here. And I think this case, in many ways, stands the treating doctor rule on its head. If all the commissioner has to do is to go out and purchase a couple of consultative reports that conflict with the treating doctor's rule, and the mere existence of those reports are sufficient grounds for discounting the opinion of a treating doctor, then there is nothing left of the treating doctor rule. And the final point I would make is that even in this particular case, we have the ALJ, at least with respect to Dr. Felkin's opinion, stating in his opinion that Dr. Felkin's opinion is not inconsistent with his RFC finding. Well, that's backwards. The ALJ doesn't make an RFC finding first and then go out and look for doctors to support that. The RFC finding has to be based on the medical evidence. What other limitations do you think should have been in the RFC? I think the limitations included in Dr. Amason's treating source statement.  Thank you. Mr. Lipke. May it please the Court and opposing counsel, my name is Stuart Lipke. I represent the Acting Commissioner of Social Security in this matter. Your Honor, as has been discussed, the main issue in this appeal is the ALJ's decision to afford Dr. Amason's treating opinion's limited weight. In his hearing decision, the ALJ issued four different valid reasons for affording Dr. Amason's opinion's limited weight. First, the ALJ stated that Dr. Amason didn't have the benefit of reviewing the entire medical record before issuing the opinions. Secondly, the ALJ stated that substantial evidence is inconsistent with Dr. Amason's treating opinions. Third, the ALJ stated that the opinions are conclusory and they lack explanation. And finally, and importantly, the ALJ stated that Dr. Amason's own treatment notes and reports don't support the level of dysfunction contained in his medical opinions. This Court has stated many times that while treating opinions are entitled to some degree of deference, they don't automatically control that the ALJ must weigh the opinions against the medical record as a whole. This Court has stated many times that an ALJ may afford a treating physician opinion less weight in instances of internal inconsistency when the physician's treatment notes don't support the level of dysfunction in the medical opinion. Isn't the ALJ required, though, to give more specific examples? I mean, he gave those sort of broad categories of reasons, but he didn't give any, did he give any specific examples of, you know, here's where there's an inconsistency, for example, in Dr. Amason's own records? Your Honor, well, he lists the four different reasons for affording them less weight. The ALJ also discussed inconsistent evidence in the hearing decision itself. The ALJ noted the appellant's activities of daily living as being inconsistent. He mentioned Dr. Spellman's examining opinion as being inconsistent. He mentioned Dr. Felkin's non-examining physician opinion as inconsistent. And this Court has never required an exhaustive analysis of the evidence by the ALJ in this regard, only to provide good reasons for the weight that it affords the opinions. And first, I think importantly, when looking at the record, Dr. Amason's own treatment notes don't support the level of dysfunction contained in his opinions. And this inconsistency this Court has held many times as reason to In May of 2008, Dr. Amason issued his work release note, very restrictive limitations in the note. But in the same treating note in the record, Dr. Amason states that the appellant's Welbutrin is helping his symptoms. He doesn't see evidence of a thought disorder. Yet he issues this treatment note in May of 2008 that appears to be based in large part on the appellant's subjective complaints rather than any evidence of a formal mental examination administered by Dr. Amason. This Court has stated that treating physician opinions based on subjective complaints are not entitled to controlling weight. Are those cases involving psychiatric disorders that say that? Because in a psychiatric disorder like this, that's a lot of what has to be relied on is the subjective statements of the claimant. It's true, Your Honor. But this Court has stated that treating physician opinions and the weight given to them should also be based on objective medical testing, mental examinations. We simply don't have that in the record here. For example, with the RFC checklist form that Dr. Amason issued in October of 2009, it doesn't contain any contemporaneous examination by Dr. Amason. It has no explanation in it. He doesn't cite to the medical record in it. This Court has held many times that RFC checklist forms like the one Dr. Amason issued in October of 2009 are not entitled to any special deference. They're entitled to less weight when they lack this elaboration. You all use those checklist forms as well, don't you, when the non-examining physician goes through things? You're criticizing him for using that kind of form, but isn't that what the commissioner does all the time? The commissioner does use those forms in those cases. The state agency examiner, non-examining physicians have access to the entire medical record. It's not clear that Dr. Amason had access to the whole medical record here. He's a treating physician opinion. I guess in the case of a state agency non-examining physician, the ALJ isn't affording that significant degree of weight in that instance because he's not a treating physician. And Your Honor, just chronologically, going down Dr. Amason's treatment notes, December of 2008, he again states wellbution makes the appellant feel calm or he's happy with his medication management. He sees no evidence of a thought disorder. He's alert oriented. In August of 2009, the appellant states that his PTSD group is helping him, yet Dr. Amason issues an extremely restrictive RFC checklist, essentially finding that the appellant can't even maintain concentration for two hours. And in December of 2009, Your Honor, in that checklist, the appellant presents to Dr. Amason and says he's feeling so okay that he doesn't even think he needs to see Dr. Amason anymore. He states he's doing okay. He finds his PTSD group to be helpful. Again, he's satisfied with his medications. He's doing as well as he can. And he states he has no need for follow-up visits. That's at transcript 692. And this is just two months removed from his RFC checklist form. There's just simply clear inconsistency between Dr. Amason's treatment notes and the level of restriction found in his treating opinions. And this court has found that to be a valid reason to afford treating opinions less weight. That's a reason the ALJ gave explicitly in his decision for finding them to have less weight. Moving on, just another valid reason that the ALJ included was it was inconsistent with other substantial evidence of record. No fewer than four different acceptable medical sources either examined the appellant personally or examined his record and issued opinions inconsistent with Dr. Amason's opinion. As has been stated, Dr. Holcomb, also a VA doctor, examined the appellant in April of 2008 and administered a test. We know he administered a mental examination. He did the MMPI test on the appellant. Couldn't reach concrete conclusions on that test because he found the appellant to be a malingerer. He was an evasive historian. He couldn't actually come to a concrete conclusion as to whether or not the appellant had PTSD. Well, did he find him to be a malingerer or just some reference to a parent? Possible malingering. He did find him to be an evasive historian, Your Honor. He also mentioned the fact that the appellant was working 32 hours per week at that time despite claiming to be disabled for years since 2005, as you noted, Your Honor, earlier. Dr. Holcomb also assigned a GAF score of 65, which this court has found to have only mild symptomology. In August of 2009, Dr. Spellman also examined the appellant and reached an opinion inconsistent with Dr. Amason's findings. Dr. Spellman, I don't know that Dr. Spellman found that the appellant didn't have PTSD. I believe he simply didn't issue a diagnosis on it. He noted that the appellant had a history of PTSD diagnoses. Dr. Spellman found that the appellant had the attention and concentration ability to maintain tasks and could handle the cognitive mental demands of basic work-like tasks, essentially could perform unskilled work. That was inconsistent with Dr. Amason's findings. Again, just going down the line of other evidence, you have speech therapists in February of 2008 that treated the appellant and found in the areas of memory, reasoning, organization, very mild limitations, if any limitations at all. And as noted, the two non-examining providers, Drs. Felkin and Rankin, and Rankin is a medical doctor for the state agency, examined the appellant's record, found very mild limitations, essentially found that the appellant could perform unskilled work. And importantly, the appellant's own behavior, his own testimony was inconsistent with Dr. Amason's findings. While Dr. Amason issued the RFC checklist, very restrictive, the appellant stated in his disability application that he gets along well with authority figures, that he needs no special reminders, he can handle a savings account, count change, use checkbook, and so on and so forth. While that's not a sole basis for finding non-disability, it is one piece of evidence that at least shows some ability to perform work. And the appellant also, despite claiming he was disabled, filed for unemployment benefits following his work release note, which as a claimant, he would be required to affirm that he was ready, willing, and able to work. And that's obviously a statement inconsistent with Dr. Amason's opinions that the appellant can't work. As the... Go down a little different path. Has the agency given any consideration to whether the Supreme Court decision holding that ERISA administrators were not obligated to follow the treating physician rule means that it is not a proper judicial gloss on this regime and the treating physician rule is not a proper judicial gloss on this regime?  I'm asking if the commissioner is entitled to Chevron deference. Your Honor, you're asking if the commissioner has a position on Chevron deference in relation to the... I asked if the agency... Has anybody researched that? It is a question that might have leaped out in the wake of that decision. Not to my knowledge, Your Honor. My understanding of the history is the treating physician rule started in the courts, perhaps this court, and was then adopted by the commissioner. Right. And then the Supreme Court comes along and in a different regime says this is not a proper judicial gloss. Now that tells me that the rule as in its present form is perhaps what the commissioner says it is. I don't have a concrete position on it. I know that's not... I'm just curious because I see that your work, your special assistant to the Regional General Counsel. I don't have an answer on that, Your Honor. I guess in sum, Your Honor, the ALJ issued... He followed the treating physician rule in this case to a T. He provided reasons for affording Dr. Ameson's treating physician opinion less weight. First and foremost, it was inconsistent internally with Dr. Ameson's own treatment notes. It also contained no elaboration, no citation to the medical record. There's not evidence that Dr. Ameson performed any special examinations that would corroborate the levels of dysfunction in his treating opinions. So in that sense, it's not better evidence than the evidence of Dr. Holcomb or the evidence of Dr. Spellman, who clearly we see contemporaneous examinations that occurred at the time they issued their opinions, and we can track that. And finally, on the issue just in responding of the VA disability rating, he found 100%... The VA found 100% disability. The ALJ clearly discussed that in his decision, as this court has required ALJs to do. He discussed it. He noted it. He stated that he considered it with all the evidence, but he afforded it less weight because it was inconsistent with other substantial evidence. He gave his reason for not... Is that comparable to a worker's disability rating as opposed to... I mean, I'm not familiar... I believe it is. It is more comparable in the sense that you don't maybe have to show that you're completely disabled. It's based on percentages, things like that. And that's one of the reasons, I think, Your Honor, that it's not really a dispositive issue before an ALJ in one of these cases, because they likely have a different definition of disability than the Social Security Administration. It's not clear that the VA had access to this entire medical record when issuing their rating. So the ALJ did consider that, and this court has noted that those ratings are not binding on the commissioner. So I guess in conclusion, Your Honor, I would just restate that the commissioner strongly contends that substantial evidence supports the ALJ's decision. He provided valid reasons for affording Dr. Ameson's treatment, opinions, limited weight, and the court respectfully requests that... I'm sorry, I respectfully request that the court affirm the ALJ's final decision in this case. Thank you. Mr. Wallace, have some time. Yes, Your Honor. It's 2 minutes and 21 seconds. May it please the court? I have just a few points, quick points to make on rebuttal. As to the treatment notes being inconsistent with Dr. Ameson's opinion here, the best the commissioner could point out here was that these notes indicate that his medications are helping, he feels calmer. But that is not very much depending on what the baseline is. Are they helping enough? And there's no indication that they were. This court has recognized on numerous occasions that you don't have to be completely out of your mind and institutionalized in order to have a disability. The fact remains that even though there were times when his medications helped, he still was significantly limited by his PTSD and depression. And the fact that he has no thought disorder, again, is not inconsistent with Dr. Ameson's opinion. That means he's not out of his mind, which is not, again, an inconsistency with the kind of limitations Dr. Ameson identified. As far as being based on his subjective complaints, Dr. Orndorff in 2005 administered several medical tests, the Mississippi scale, which is designed to measure the severity of PTSD, the Beck Depression Inventory, the MMPI. He concluded that Mr. Smith is severely affected by his PTSD, as did Dr. Goad, who if you look at the records, she has a multi-page extensive clinical evaluation. And then I would simply remind the court, Dr. Holcomb's opinion, contradicted by every other VA doctor. Dr. Spellman reviewed no VA records in coming to his opinion. And Dr. Felkin, non-examining doctor, many factual discrepancies in her report based on the VA records. And Dr. Rankin, another non-examining doctor, provided only with the reports of Dr. Holcomb and Dr. Spellman. None of this rises to the level of substantial evidence to contradict the ALJ's rejection, or to support the ALJ's rejection of Dr. Holcomb. Thank you, counsel. The case has been very well briefed and argued. We will take it under advisement. Please call the next case. The next case for argument is case number 13-2467, Edalberto Hernandez Garcia v. Eric Holder Jr.